# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

RONDA WISE, as mother and next of kin of )
JAMES ROBERT WISE, deceased, )
                                                        )
                Plaintiffs, )
                                                        )
vs. ) No. CIV-06-045-S
                                                        )
WARDEN MIKE MULLIN, WARDEN RANDALL LOPEZ, )
and ROBBIE ANDERSON, )
                                                        )
                Defendants. )

## ORDER

Before the court for its consideration is Defendant Mike Mullin's Motion for Summary Judgment and Brief in Support filed July 14, 2006. The court rules as follows on the motion.

## STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. Celotex v. Catrett, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the defendant's motion.

## FINDINGS OF FACT

Plaintiff, Ronda Wise, is the mother of inmate James Wise ("decedent"). On February 24, 2004, decedent was an inmate in the custody of the Oklahoma Department of Corrections ("DOC") and housed at the Oklahoma State Penitentiary ("OSP"). At all times relevant to this complaint, defendant Mullin was employed as the Warden of OSP. On February 24, 2004, Darrell Hogan was also an inmate in the custody of the DOC and housed at OSP. Hogan has been continuously incarcerated since 1987. Prior to 1987 inmate

Hogan's convictions included the following: Burglary, Second Degree, Larceny of a Motorcycle, and Escape from a Penal Institution.  Later, Hogan received four (4) felony convictions after he plead guilty and received a sentence of fifteen (15) years on the following counts arising from an escape from Ottawa County Jail: Obtaining Property by False Pretenses; Knowingly Concealing Stolen Property; Larceny of an Automobile; Robbery by Force or Fear; and Escape from County Jail.  On December 1, 1987, Hogan was convicted of Uttering a Forged Instrument, After Former Conviction of a Felony.

Decedent was received into custody at Lexington Assessment and Reception Center on May 24, 2000.  He was transferred to Dick Conner Correctional Center a medium security DOC facility located north of Hominy, Oklahoma on June 16, 2000.  On May 2, 2003, while housed at Dick Conner Correctional Center decedent received and plead guilty to a disciplinary misconduct for "Menacing" a female staff member.  On May 21, 2003, decedent was placed in the Segregated Housing Unit due to prison officials suspecting him of battering his cell partner.  In total from May 24, 2000, through May 21, 2003, decedent received 13 disciplinary misconducts.  On June 23, 2003, a maximum security transfer packet was submitted by staff to make the request that decedent be transferred to a maximum security facility.  The regional director of DOC approved decedent's transfer to OSP on July 7, 2003.  Decedent transferred to OSP on July 18, 2003.  Warden Mullin did not participate in any way in the decision to transfer Wise to OSP.

Decedent was housed on Run 3 Cell 22 of F Cell House.  Warden Mullin did not participate in any way in any housing assignment of decedent during his incarceration at OSP.  Hogan voluntarily moved into Wise's cell on February 16, 2004, after

Wise's previous cell mate requested a move to another cell.  At the time Hogan moved into Run 3 Cell 22 of F Cell House with Wise, Hogan did not know Wise and did not know anything about him.

On February 24, 2004, Hogan and decedent had been living together for approximately 8 days.  Up until February 24, 2004, there had been no problems in the cell.  Hogan awoke at 5:45 a.m. to find decedent mopping.  That morning, decedent threatened Hogan.  Hogan did not report the threat.  Hogan had placed a sheet over the cell door.  Sometime after 7:00 a.m. Hogan removed the string from his laundry bag and strangled decedent.  Decedent laid on the floor for about 2 hours before Hogan called for help.  Around 8:00 a.m. Hogan attempted to get the attention of the officer on duty but the sheet over the cell door prevented the officer from noticing Hogan.  At 8:30 a.m. Sergeant Martin was making his rounds and saw Hogan waiving.  He went to the cell and saw decedent on the floor.  He immediately went to the control room and told Corporal Lopez that there was a man down in cell 22.  Sergeant Martin entered the cell at 8:35 a.m. and notified Corporal Lopez at 8:37 a.m. a man was down.  At approximately 8:39 a.m. Corporal Lopez placed Hogan in handcuffs and removed him from the cell. At approximately 8:40 a.m. Captain Franklin, Corporal Lopez, Corporal Benefield and LPN Charles Folsom arrived at Run 3 F Cell House, Cell 22 to give aid to Wise.  At approximately 8:50 a.m. OSP staff carried Wise to the infirmary for emergency treatment.  At approximately 8:55 a.m. OSP medical staff called an ambulance.  At 9:06 a.m. the ambulance arrived and transported Wise to the hospital.  On March 13, 2004, decedent died at Presbyterian Hospital in Oklahoma City.

At the time of the incident, the prison was staffed

sufficiently according to guidelines.  Further, all officers involved in this incident were trained accordingly to guidelines.

## ARGUMENTS AND AUTHORITIES

### I.  Fourth Amendment Claim

In her Amended Complaint, plaintiff alleges the defendant was deliberately indifferent and grossly negligent in his responsibilities to the decedent while he was in the care and custody of the DOC. She alleges the defendant with his conduct violated the decedent's Fourth Amendment rights. In her Amended Complaint, plaintiff does not elaborate on this claim.  Plaintiff does nothing in her response to assist the court with a clarification of this claim either.  In her response to the motion for summary judgment she argues that "Plaintiff's claim arising out of the Fourth Amendment are sufficiently plead to support such a claim" and the "plaintiff rests thereon".  The court disagrees the plaintiff's claim is sufficiently plead. The claim as set forth in the Amended Complaint is vague and stated in very general terms.  It does not set forth specific facts explaining this claim.

The Fourth Amendment is designed to protect against unreasonable searches and seizure.  <u>Terry v. Ohio</u>, 392 U.S. 1, 8 (1968). The court assumes plaintiff is claiming a Fourth Amendment seizure occurred due to the death of her son. However, defendant Mullin is not the individual responsible for the death of her son.  It is undisputed Hogan, an inmate at OSP, murdered her son.  Hogan is the individual who seized her son. The facts are undisputed defendant Mullin had no knowledge

5

regarding Mr. Hogan's dangerous propensities.  Hogan had been imprisoned since 1987 with no record of violent behavior. In fact, decedent was the individual with the violent record. Defendant Mullin did not participate in the decision to transfer decedent to OSP and did not participate in the decision regarding decedent's housing assignment.  The fact defendant Mullin did not personally participate in the alleged civil rights violation is detrimental to plaintiff's claim.  Personal participation is an essential element of a 42 U.S.C. Sec. 1983 claim against a public official.  <u>Bennett v. Passic</u>, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  An official is not individually liable unless an affirmative link exists between the official's conduct and the alleged constitutional deprivation.  <u>Grimsley v. McKay</u>, 93 F. 3d 676, 679 (10th Cir. 1996).  The alleged constitutional deprivation must be directly based upon the defendant's personal participation or his exercise of control or direction.  <u>Green v. Branson</u>, 108 F.3d 1296, 1302 (10th Cir. 1997).  The facts are undisputed that defendant Mullin did not personally participate in the murder of plaintiff's decedent.  He did not personally participate in any decision leading up to plaintiff being placed in the cell with Hogan.

Further, plaintiff cannot hold defendant liable under a *respondeat superior* theory.  Under 42 U.S.C. Sec. 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." <u>Jenkins v. Wood</u>, 81 F.3d 988, 994 (10th Cir.1996)(internal quotations omitted) and <u>Bass v. Robinson</u>, 167 F.3d 1041, 1048 (6th Cir.1999) ("Liability ⋯ must be based upon more than a mere right to control employees."). Supervisors are only liable under 42 U.S.C. Sec. 1983 for their own culpable involvement in the violation of a

person's constitutional rights. To establish supervisor liability under 42 U.S.C. Sec. 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, ··· the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" Jenkins at 994-95 (quoting Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir.1992)). In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. Rios v. City of Del Rio, 444 F.3d 417, 425 (5th Cir.2006). There is absolutely no evidence in the record that defendant Mullin had any knowledge of Mr. Hogan's dangerous propensities. There is no connection between Mullin, his subordinates at the OSP and the alleged constitutional violation. He had no personal participation in the death of decedent. The court simply does not see how under the facts of this case the plaintiff has sufficiently plead a cause of action under the Fourth Amendment. Accordingly, the defendant Mullin's motion for summary judgment on this claim is hereby granted.

## II. Fifth Amendment Claim

In her Amended Complaint, plaintiff alleges defendants were deliberately indifferent and grossly negligent in their responsibilties to the decedent while he was in the care and custody of the DOC. In her Amended Complaint, she alleges defendant violated the decedent's Fifth Amendment rights. However, plaintiff provides absolutley no facts to support this claim. The Fifth Amendment provides:

> No person shall be held to answer for a capital, or

7

>otherwise infamous crime, unless on a presentment or
>indictment of a Grand Jury, except in cases arising in
>the land or naval forces, or in the Militia, when in
>actual service in time of War or public danger; nor
>shall any person be subject for the same offense to be
>twice put in jeopardy of life or limb; nor shall be
>compelled in any criminal case to be a witness against
>himself, nor be deprived of life, liberty, or property,
>without due process of law; nor shall private property
>be taken for public use, without just compensation.

The court is unclear as to the exact claim the plaintiff is making under the Fifth Amendment. In the response to the summary judgment plaintiff only addresses the fact that since the defendant acted in his official capacity as a representative of a state agency the Fifth Amendment right to due process is applicable to him as well. Plaintiff also indicates more discovery is needed on this issue. The court assumes that plaintiff is alleging her decedent was deprived of his life without due process. Again, the defendant Mullin is not the individual who deprived decedent of his life. Mr. Hogan is the individual who took the decedent's life. He is the individual who caused the deprivation. The fact defendant Mullin did not personally participate in the alleged civil rights violation is detrimental to plaintiff's claim. Personal participation is an essential element of a 42 U.S.C. Sec. 1983 claim against a public official. <u>Bennett v. Passic</u>, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An official is not individually liable unless an affirmative link exists between that official's conduct and the alleged constitutional deprivation. <u>Grimsley v. McKay</u>, 93 F. 3d 676, 679 (10th Cir. 1996). The alleged constitutional deprivation must be directly based upon the defendant's personal participation or his exercise of control or direction. <u>Green v. Branson</u>, 108 F.3d 1296, 1302 (10th Cir. 1997). Plaintiff cannot hold defendant liable under a *respondeat superior* theory as a way

of alleging participation in the violation of plaintiff's civil rights either. Under 42 U.S.C. Sec. 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir.1996)  Supervisors are only liable under 42 U.S.C. Sec. 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under 42 U.S.C. Sec. 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, ··· the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.' " Jenkins at 994-95 (quoting Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir.1992)). In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. Rios v. City of Del Rio, 444 F.3d 417, 425 (5th Cir.2006).  There is absolutely no evidence in the record that defendant Mullin had any knowledge of Mr. Hogan's dangerous propensities.  He had no personal participation in the death of decedent. The facts are undisputed he did not participate in the decision to transfer him to OSP or in the decision to house plaintiff in the cell with Hogan.  The court simply does not see how under the facts of this case the plaintiff has sufficiently plead a cause of action under the Fifth Amendment.  Accordingly, the defendant Mullin's motion for summary judgment on plaintiff's Fifth Amendment claim is hereby granted.

### III.  Eighth Amendment Claim

Plaintiff alleges defendant Mullin violated decedent's Eighth Amendment rights.  Plaintiff appears to be asserting a failure to protect claim.  However, in order to proceed on this claim, plaintiff must establish defendant personally participated in the alleged violation.  Personal participation is an essential element of a 42 U.S.C. Sec. 1983 claim against a public official.  Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  An official is not individually liable unless an affirmative link exists between the official's conduct and the alleged constitutional deprivation.  Grimsley v. McKay, 93 F. 3d 676, 679 (10th Cir. 1996). The alleged constitutional deprivation must be directly based upon the defendant's personal participation or his exercise of control or direction.  Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).

In her response to defendant's motion for summary judgment, plaintiff makes a bizarre argument that since defendant Mullin is "captain of the ship" he is responsible for everything that happens in the prison.  First, plaintiff has absolutely no case law to support this broad proposition.  Second, plaintiff cannot hold defendant Mullin liable under a theory of *respondeat superior*.  Under 42 U.S.C. Sec. 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir.1996) and Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999) ("Liability ··· must be based upon more than a mere right to control employees."). Supervisors are only liable under 42 U.S.C. Sec. 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under 42 U.S.C. Sec. 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors

who actually committed the violation. Instead, ··· the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" <u>Jenkins</u>, 81 F.3d at 994-95 (quoting <u>Woodward v. City of Worland</u>, 977 F.2d 1392, 1399 (10th Cir.1992)). In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. <u>Rios v. City of Del Rio</u>, 444 F.3d 417, 425 (5th Cir.2006). The record is undisputed defendant Mullin did not make the decision to transfer decedent and did not make a decision in regard to his cell assignment. The facts are undisputed defendant Mullin did not murder decedent. Defendant Mullin did not personally participate in the civil rights violation which plaintiff alleges. There is simply no evidence connecting defendant Mullin to plaintiff's alleged constitutional violation. Thus, plaintiff simply cannot establish the personal participation element of her Eighth Amendment claim.

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) the United States Supreme Court noted "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Assuming plaintiff could get past the personal participation hurdle, to establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff "'must show that he is incarcerated under conditions posing a substantial risk of serious harm' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." <u>Benefield v. McDowall</u>, 241 F.3d 1267, 1271 (10th Cir.2001). The subjective component of the deliberate indifference test requires that a prison official cannot be held liable under the deliberately indifferent standard unless he

"knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer at 837. Plaintiff cannot establish the requisite deliberate indifference. It is undisputed defendant Mullin never received notification from either inmate of a problem.  Further, Hogan's record while incarcerated does not show any violent tendencies.  Defendant Mullin did not receive any notification either written or oral, by either inmate requesting a transfer.  It is undisputed there was never any type of request that would have alerted defendant to the problem. The only evidence plaintiff has submitted is an unverified Request to Staff by an inmate dated two months after the incident which indicates Hogan was violent.  This is simply insufficient to establish any notice by this defendant. Plaintiff's conclusory statement that defendant was indifferent to the needs of the decedent because he allowed Hogan to hang a sheet in the cell is insufficient to defeat a properly supported motion for summary judgment.  It is well settled law "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." White v. York Int'l Corp., 45 F.3d 357, 363 (10th Cir.1995). Therefore, the court grants defendant's motion for summary judgment as to the defendant Mullin on plaintiff's Eighth Amendment claim.

### IV. Equal Protection Claim

In her Amended Complaint, plaintiff alleges "Defendant's actions and inaction deprived the decedent of his right to the equal protection of the laws as provided for in the Fourteenth Amendment."  The Equal Protection Clause requires that no state deny any person within its jurisdiction equal protection of the

laws. An equal protection violation occurs when the government treats someone differently than another who is similarly situated. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. Schweiker v. Wilson, 450 U.S. 221, 230 (1981). The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. McLaughlin v. Florida, 379 U.S. 184, 192 (1964) and Graham v. Richardson, 403 U.S. 365 (1971). Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution. Kramer v. Union Free School District No. 15, 395 U.S. 621 (1969). Plaintiff makes no allegation that decedent was a member of a constitutionally protected class or that he had been denied a fundamental right. As a result, the actions of defendant must only bear a rational relation to a legitimate state purpose. Plaintiff was housed in his cell according to the criteria set forth by the DOC and OSP. This criteria is based on security risk and the specific needs of the inmate. Plaintiff has not sufficiently alleged and simply cannot establish that he was treated differently than any other inmate in the decision to house him in his designated cell. Accordingly, defendant's motion for summary judgment on plaintiff's equal protection claim is hereby granted.

## V.  42 U.S.C.Sec. 1985

Plaintiff alleges she is asserting a violation against

defendant under 42 U.S.C. Sec. 1985. In her Amended Complaint, plaintiff fails to explain how 42 U.S.C. Sec. 1985 was violated. Because plaintiff has failed to explain her claim under 42 U.S.C. Sec. 1985, the court assumes plaintiff is alleging a claim under 42 U.S.C. Sec. 1985 (3). The essential elements of a Sec. 1985 (3) claims are "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993). Sec. 1985 (3) does not apply to all tortuous, conspiratorial interferences with the rights of others, but rather only to conspiracies motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus." Id. There is no allegation in plaintiff's Amended Complaint concerning race or class based discrimination. Furthermore, there is absolutely no evidence of a conspiracy. Plaintiff's response to this argument is "Plaintiff states that her complaint is sufficiently plead to support such a claim and rest thereon. This Court may resolve this issue without further response from Plaintiff, but notes that, pending the completion of discovery, it would be difficult to determine whether or not a conspiracy existed between defendants." However, plaintiff does nothing to explain how further discovery will assist her conspiracy claim. She does not state that depositions are slated or interrogatories have been sent. This case was filed January 31, 2006, against this defendant. Plaintiff's initial discovery time has since expired. She has had more than enough time to complete discovery to determine her claims against this defendant.

Further, she cannot simply attempt to defeat a properly supported summary judgment motion by arguing more discovery is needed. Rule 56(f) allows a party opposing summary judgment to

delay or defeat the summary judgment motion in order to conduct discovery that is essential to his or her case. The party seeking a Rule 56(f) discovery order must file an affidavit explaining "with specificity how the desired time would enable [the nonmoving party] to meet its burden in opposing summary judgment." To invoke the protection of Rule 56(f), the party filing the affidavit must state with specificity how "the desired time would enable [the nonmoving party] to meet its burden in opposing summary judgment." <u>Pasternak v. Lear Petroleum Exploration, Inc.</u>, 790 F.2d 828, 833 (10th Cir. 1986) and <u>Guthrie v. Sawyer</u>, 970 F.2d 733, 738 (10th Cir. 1992). "Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable····" <u>Pasternak</u> at 833.".... the party filing the affidavit must show how additional time will enable him to rebut [the] movant's allegations of no genuine issue of fact." <u>Patty Precision v. Brown & Sharpe Mfg. Co</u>, 742 F.2d 1260, 1264 (10th Cir. 1984). Plaintiff did not file an affidavit pursuant to the rule, but worse yet, plaintiff failed to explain how additional discovery would assist in her opposition to defendant's claim of summary judgment on this claim. Accordingly, defendant's motion for summary judgment on plaintiff's 42 U.S.C. Sec. 1985 claim is granted.

## **VI. Official Capacity Claims**

In her Amended Complaint, plaintiff alleges a claim against defendant Mullin in his official capacity. However, not one of plaintiff's claims has survived the motion for summary judgment. Thus, defendant Mullin is granted summary judgment on the claims made against him in his official capacity as well.

Accordingly, the defendant Mike Mullin's Motion For Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED** this 12th day of September, 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma